**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ELNORA ROSS, as Administratrix of the Estate of C.N., Deceased,

                        Plaintiff,

v.

THE UNITED STATES OF AMERICA, and SERGEANT JOHN DOE,

                        Defendants.

5:23-cv-01157 (BKS/ML)

---

**Appearances:**

*For Plaintiff:*
Patricia A. Lynn-Ford
Kaitlyn Marie Guptill
Lynn Law Firm, LLP
333 West Washington Street, Suite 100
Syracuse, NY 13202

*For Defendant United States of America:*
Carla B. Freedman
United States Attorney
Northern District of New York
Forrest T. Young
Assistant United States Attorney
100 S. Clinton Street, Suite 900
Syracuse, NY 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## DECISION AND ORDER

**I.     INTRODUCTION**

Plaintiff Elnora Ross brings this lawsuit as Administratrix of the Estate of C.N., Deceased, against Defendants United States of America and "Sergeant John Doe." (Dkt. No. 1).[1] Plaintiff alleges that in January 2011 Sergeant Doe sexually assaulted C.N., who was, at the time, a 19-year-old Private in the Department of the Army, stationed at Fort Drum, New York, under Sergeant's Doe's command. (*Id.* ¶¶ 16, 20, 28). Plaintiff asserts three common law tort claims against the United States and Sergeant Doe under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1): (1) a claim of "intentional acts" against Sergeant Doe ("Count I"), (Dkt. No. 1, ¶¶ 38–47); (2) a claim of negligent hiring, training, supervision, and control against the Department of the Army (sued as the United States) ("Count II"), (*id.* ¶¶ 48–61); and (3) a claim of wrongful death against the Army ("Count III"), (*id.* ¶¶ 62–67 (alleging the Army's negligence resulted in C.N.'s severe mental anguish which "drove [C.N.] to take her own life on October 27, 2021")).

Presently before the Court is Defendant United States' motion to dismiss Plaintiff's negligence and wrongful death claims (Counts II and III) under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. (Dkt. No. 10). The parties have filed responsive briefing. (Dkt. Nos. 18, 19). For the reasons below, Defendant's motion to dismiss Counts II and III under Fed. R. Civ. P. 12(b)(1) is granted.

---

[1] The United States does not represent Defendant Sergeant John Doe. (Dkt. No. 10-1, at 3). Although Plaintiff states that her attorney has identified Defendant Sergeant John Doe, (Dkt. No. 18, ¶ 37), Plaintiff has not amended the Complaint with Defendant Sergeant John Doe's identity. Therefore, the Court continues to refer to him as Defendant Doe.

II.     **FACTS**[2]

In January 2011, C.N., age 19, was a Private in the Department of the Army and stationed at Fort Drum, New York. (Dkt. No. 1, ¶ 20). On or about January 29, 2011, C.N. was transported in Sergeant Doe's car to a house party and thereafter was unlawfully supplied, permitted and allowed to consume multiple alcoholic beverages by Sergeant Doe and other fellow officers and/or soldiers. (*Id.* ¶ 22). C.N. "was observed by those service personnel present to be visibly intoxicated." (*Id.* ¶ 23). Sergeant Doe then drove C.N. to a local bar, where he and other soldiers supplied her with additional alcoholic beverages. (*Id.* ¶ 24). C.N. became "even further intoxicated" as evidenced by her erratic behavior, multiple falls, and difficulty walking and staying awake. (*Id.* ¶ 25). Sergeant Doe carried C.N. to his vehicle and drove her to a Microtel where he brought her to a hotel room he paid for in cash. (*Id.* ¶¶ 25–26). In the hotel room, Sergeant Doe forcibly sexually assaulted C.N. while she was intoxicated and unable to consent. (*Id.* ¶ 28). A fellow Private drove C.N. back to barracks the next morning. (*Id.* ¶ 29).

C.N reported the sexual assault, and the Army's investigation revealed facts substantiating C.N.'s intoxication. (*Id.* ¶¶ 30–31). According to a "Military Police Report," C.N.'s report of criminal conduct "was evaluated to be 'founded' based upon New York State criminal statutory offenses including first degree rape." (*Id.* ¶ 33). "Said report notes that [C.N.] reported the sexual assault and that her superior, Sergeant John Doe, provided her with multiple alcoholic beverages[,] . . . offered to take her back to her barracks and instead took her to a hotel where he engaged in non-consensual sexual intercourse with her." (*Id.* ¶ 34). The report

---

[2] The facts are drawn from the Complaint, (Dkt. No. 1), and the attachments thereto. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, in resolving Defendant's motion to dismiss for lack of subject matter jurisdiction, the Court has also considered the parties' evidentiary submissions. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

indicates, however, that upon Army coordination with New York State Police, the allegations did not meet the elements of a crime under the New York State Penal Code. (Dkt. No. 18-4, at 14). As such, the New York State Police declined to conduct further investigative activity. (*Id.*).

Once the New York State Police declined to investigate, the Department of the Army Criminal Investigation Division (CID) assumed position as the lead investigative agency. (Dkt. No. 18-5, at 9). According to the CID Agent's Investigation Report, on May 11, 2011, a written legal opinion "reflected probable cause existed to believe [Sergeant Doe] committed the listed offenses for this investigation." (*Id.* at 65). Two days later, C.N. was contacted and briefed on the closure of the investigation. (*Id.*). The report does not explain why the investigation was closed despite a finding of probable cause. (*Id.*). Plaintiff alleges that Sergeant Doe was never prosecuted and remained in the employ of the United States Army and stationed at Fort Drum. (Dkt. No. 1, ¶ 36).

In an affidavit, Plaintiff, C.N.'s mother, states that C.N. was subsequently honorably discharged from the Army in December of 2012. (Dkt. No. 18, ¶ 25). After her discharge, she returned home to Alabama, where she demonstrated concerning behavior including suicidal threats and heavy drinking. (*Id.* ¶ 26). In 2015, C.N. received psychological care at the Veteran's Hospital in Birmingham, Alabama and was diagnosed with Chronic Post Traumatic Stress Disorder, Panic Disorder, and Persistent Alcohol Abuse. (*Id.* ¶ 27). Her records linked these mental health conditions to the alleged sexual assault. (*Id.*). C.N. reported to her psychiatrist that she had nightmares of Sergeant Doe's face and flashbacks. (*Id.*). In 2020, C.N. was admitted to a hospital from July 23, 2020 through July 27, 2020 for psychiatric care because of suicidal threats she made. (*Id.* ¶ 28). Ultimately, on October 27, 2021, C.N. took her own life. (Dkt. No. 1, ¶ 47). C.N. was survived by her mother, Plaintiff, and her three minor children. (*Id.* ¶ 13).

### III. ANALYSIS

#### A. Standard of Review

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[ ] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record[.]" *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

B.     **Intramilitary Immunity /** *Feres* **Doctrine**

Defendant argues that "[t]he Complaint must be dismissed because the Court lacks subject matter jurisdiction" under Rule 12(b)(1) because "Plaintiff's claims against the United States are barred by intramilitary immunity (*Feres* doctrine)[.]" (Dkt. No. 10-1, at 3). "[T]he proper vehicle for dismissing a *Feres*-barred FTCA claim is a dismissal for lack of subject-matter jurisdiction." *Wake v. United States*, 89 F.3d 53, 57 (2d Cir. 1996). Plaintiff opposes Defendant's motion, arguing that Sergeant Doe's alleged sexual assault was "not incident to military service and thus is not barred by intramilitary immunity[.]" (Dkt. No. 18-10, at 5).

The *Feres* doctrine generally bars FTCA claims against the United States where the alleged injuries arise out of activity incident to military service. *See generally Feres v. United States*, 340 U.S. 135 (1950). The "incident to service test" asks whether "particular suits would call into question military discipline and decisionmaking [and would] require judicial inquiry into, and hence intrusion upon, military matters." *United States v. Stanley*, 483 U.S. 669, 682 (1987). Because, as discussed below, Plaintiff's claims require judicial inquiry into military matters, dismissal for lack of subject-matter jurisdiction is appropriate here.

*Feres* immunity is partially rooted in the need to preserve the military discipline structure and prevent judicial involvement in sensitive military matters. *See United States v. Johnson*, 481 U.S. 681, 688–91 (1987). Soldiers and their superiors have a peculiar relationship, and FTCA suits of this nature would affect military discipline, possibly resulting in extreme results. *United States v. Muniz*, 374 U.S. 150, 162 (1963) (quoting *United States v. Brown*, 348 U.S. 110, 112 (1954)). As such, a suit "strikes at the core" of the concerns underlying intramilitary immunity and must be dismissed if it challenges the "management of the military" or "calls into question basic choices about the discipline, supervision, and control of a serviceman," such that it would require a "civilian court to second-guess military decisions." *United States v. Shearer*, 473 U.S.

53, 57–58 (1985). Military decisions include "whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct." *Id.* at 58. This is true even if the conduct forming the basis for the FTCA claim occurs off-duty and away from base. *Id.* at 57.

The Supreme Court has explained that *Feres* "cannot be reduced to a few bright-line rules," and instead, "each case must be examined" individually. *Id.* The Second Circuit has instructed courts to consider a list of non-dispositive factors in determining whether injuries occurred incident to service. *Wake*, 89 F.3d at 58. These factors include:

> [1] the relationship of the activity to the individual's membership in the service, . . . [2] the location of the conduct giving rise to the underlying tort claim[,] . . . [3] whether the activity is limited to military personnel[,] and [4] whether the service member was taking advantage of a privilege or enjoying a benefit conferred as a result of military service.

*Id.* (citations omitted). In addition to these factors, courts should also consider the principles underpinning *Feres*, such as deference to "delicate questions involving military discipline." *Kloner v. United States*, 196 F. Supp. 3d 375, 382 (E.D.N.Y. 2016) (quoting *Taber v. Maine*, 67 F.3d 1029, 1049 (2d Cir. 1995)).

*Feres* is still good law, and the Court applies it faithfully to the facts of this case, but it is worth noting that the doctrine is not without criticism. The Second Circuit has explained that "the *Feres* doctrine has gone off in so many different directions that it is difficult to know precisely what the doctrine means today." *Taber*, 67 F.3d at 1032. Other courts have similarly criticized the doctrine. *See Selbe v. United States*, 130 F.3d 1265, 1266 (7th Cir. 1997) (collecting judicial opinions and academic commentaries criticizing the doctrine); *Estate of McAllister v. United States*, 942 F.2d 1473, 1475–76 (9th Cir. 1991) (explaining the "highly controversial" nature of the doctrine). Although the doctrine often produces unfair results, it

7

"remains the law of the land, and we must undertake to apply it." *Estate of McAllister*, 942 F.2d at 1476.

### 1. Plaintiff's FTCA Negligence Claim (Count II)

In Count II of the complaint, Plaintiff alleges that Defendant "was negligent in its hiring, supervision, training, direction and retention of Sergeant John Doe," and in its failure to prosecute or punish Defendant Doe for sexually assaulting Plaintiff. (Dkt. No. 1, ¶¶ 56–60). Applying the *Wake* factors and principles to this claim, the Court finds that the factual allegations underlying Plaintiff's negligence claim render C.N's injuries "incident to service." Plaintiff argues that although C.N. was an active-duty member of the military at the time of the assault, (Dkt. No. 1, ¶ 20), the events leading to the sexual assault occurred during C.N.'s personal time, the alleged sexual assault off the military base in a private hotel room, (Dkt. No. 18-10, at 11), and points out that there are no allegations that C.N. was "under orders to submit to" Defendant Doe's advances, noting that "C.N. stood in exactly the same place as a civilian in the moments of her sexual assault[.]" (Dkt. No. 18-10, at 12).

But the allegations on which Plaintiff bases her claim are that Defendant was negligent in its hiring, training, and retention of Defendant Doe, violating its "duty to adequately and properly direct[,] train," and "supervise" Defendant Doe as well as its duty "to create an environment where superior officers are not permitted to engage in unlawful conduct," such as transporting underage soldiers to bars, supplying them alcohol, and subjecting them to "unconsented sexual activity," (Dkt. No. 1, ¶¶ 58–59), and that it was negligent in its "failure to prosecute, punish," or otherwise subject Defendant Doe to consequences for his conduct, (*id.* ¶ 60). Because Plaintiff's allegations center on Defendant's hiring decisions, allegedly inadequate training of superior officers, and alleged failure to prosecute or punish officers, adjudication of this case would require engagement in "fact-finding about [the military's] 'basic choices about

8

the discipline, supervision, and control'" of its officers. *Doe v. Hagenback*, 870 F.3d 36, 46 (2d Cir. 2017) (quoting *Shearer*, 473 U.S. at 58). Such decisions are squarely within the bounds of military management. *See Doe v. United States*, 815 F. App'x 592, 594 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1498 (2021); *Chappell v. Wallace*, 462 U.S. 296, 301 (1983) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953)) ("[Judges] are not given the task of running the Army."); *Smith v. United States*, 196 F.3d 774, 776–78 (7th Cir. 1999); *Cioca v. Rumsfeld*, 720 F.3d 505, 512–17 (4th Cir. 2013); *Klay v. Panetta*, 758 F.3d 369 (D.C. Cir. 2014). Thus, as alleged, because Plaintiff's injuries "occurred 'incident to service,'" her claims are foreclosed by *Feres*. *Cf. Doe*, 815 F. App'x at 594 (2d Cir. 2020) (applying *Feres* to cadet's FTCA claims that West Point officials, among other things, "negligently trained and supervised West Point cadets and staff concerning sexual assault," failed to create "policies concerning sexual assault," and failed "to discipline assailants," explaining that such claims were "incident to service" because adjudication would have required the military to "convince a civilian court of the wisdom of a wide range of military and disciplinary decisions").

Plaintiff acknowledges this enormous body of unfavorable case law and urges the Court to adopt the Ninth Circuit's outlier approach. (Dkt. No. 18-10, at 5–6). In 2022, the Ninth Circuit found *Feres* inapplicable where one member of the military sexually assaulted another while they were lodged at a hotel during a professional forum. *Spletstoser v. Hyten*, 44 F.4th 938 (9th Cir. 2022). Plaintiff argues that *Spletstoser* is applicable because in both cases the alleged sexual assault occurred off-base at a hotel open to the public during the servicemembers' personal time and the victim stood in exactly the same place as a civilian in those moments. (Dkt. No. 18-10, at 9–12). While the facts in the two cases may appear similar, in *Spletstoser*, the plaintiff brought state law claims of intentional torts against the perpetrator, 44 F.4th at 942; the Ninth Circuit

9

expressly distinguished *Feres* cases involving "the management, supervision, or training of military personnel." *Id.* at 958 (citation omitted). And here the claims at issue—Plaintiff's negligence claims against the Department of the Army—raise questions that pertain to the Army's internal hiring, supervision, training, and discipline processes.

The case law in the Second Circuit is clear that claims are incident to service, and therefore barred under *Feres*, if, as here, they "require a civilian court to engage in searching fact-finding about [the Army's] 'basic choices about the discipline, supervision, and control'" of servicemembers. *Doe*, 815 F. App'x at 595 (quoting *Shearer*, 473 U.S. at 58). While the Court sympathizes with the tragedy alleged in this case, the Court is bound to follow governing caselaw. Thus, the Court finds that Count II of Plaintiff's complaint is barred by *Feres*, and as such, Defendant's 12(b)(1) motion for lack of subject-matter jurisdiction is granted.

### 2. Plaintiff's FTCA Wrongful Death Claim (Count III)

Plaintiff alleges in Count III of her complaint that Defendant's negligent hiring, retention, supervision and control of its employees, including Defendant Doe, caused C.N. extreme mental anguish, ultimately driving her to take her own life on October 27, 2021. (Dkt. No. 1, ¶ 63). Applying the factors outlined above,[3] the Court again concludes that Plaintiff's claim as it relates to Defendant's conduct in hiring, retention, supervision, and control is barred.

The Court recognizes that at the time of C.N.'s death, she was no longer serving in the military. Over ten years had passed between the alleged assault and C.N.'s death. (Dkt. No. 1, ¶¶ 22–28, 63). C.N. first received psychological care in connection to her trauma from the alleged

---

[3] Although the Second Circuit has not explicitly addressed the applicability of *Feres* to wrongful death claims arising from suicide, it appears the same analysis applies. *See, e.g.*, *Stubbs v. United States*, 744 F.2d 58, 60–61 (8th Cir. 1984) (applying *Feres* in affirming dismissal of the plaintiff's claim that "military superiors were aware of sexual harassment of female enlisted personnel on base, and yet did nothing to prevent it," thereby "creat[ing] the atmosphere which ultimately led to [the servicemember's] suicide").

assault in 2015, four years after the incident. (Dkt. No. 18, ¶ 27). She did not demonstrate suicidal ideation until 2020. (*Id.* ¶ 28). At the time of her death, she had been out of the Army for nearly nine years. (*Id.* ¶¶ 8, 25). She did not die on a military base. (Dkt. No. 18-1). These facts suggest the inapplicability of the *Feres* doctrine given that the injury occurred off-base in a manner not limited to military personnel. *Kloner*, 196 F. Supp. 3d at 383. However, that her trauma and anguish were closely related to events that occurred while she was a servicemember, and she received psychological care for free at the Veteran's Hospital in Birmingham as a "benefit conferred as a result of military service" weigh in favor of applying *Feres*. (Dkt. No. 18-6, at 8–12); *Kloner*, 196 F. Supp 3d at 383.

Furthermore, in analyzing Plaintiff's claim, the relevant time period "is not the time of injury but the time of the negligent act." *Hopkins v. United States*, 567 F. Supp. 491, 495 (E.D.N.Y. 1983) (citing *Monaco v. United States*, 661 F.2d 129, 133 (9th Cir. 1981). As with Count II, the alleged negligence with respect to Count III occurred at the time of the alleged sexual assault. The theory of liability in Count III is virtually identical to the theory of liability in Count II, and likewise, adjudication would require courts to consider "delicate questions involving military discipline." *Kloner*, 196 F. Supp. 3d at 382 (quoting *Taber*, 67 F.3d at 1049). As such, that the alleged mental health issues and eventual suicide occurred off-base and after service ended is insufficient to overcome the *Feres* doctrine. *See Hopkins*, 567 F. Supp. at 491, 495 (barring plaintiffs' claim that "defendant's negligence caused their son to suffer great emotional distress and mental anguish which eventually culminated in his death by suicide," because such a claim challenged "decisions of military origin" that occurred "while decedent was in an active duty status on a military base, and subject to military control"). Therefore, the

11

Court finds that Count III of Plaintiff's complaint is barred by *Feres* as well, and as such, dismissed pursuant to Defendant's 12(b)(1) motion for lack of subject-matter jurisdiction.[4]

## IV. LEAVE TO AMEND

Plaintiff requested an opportunity to amend her Complaint in the event that the Court granted Defendant's motion to dismiss. (Dkt. No. 18-10, at 26). Plaintiff did not, however, identify any additional facts or legal theories she could assert if given leave to amend. *Id.* "The court should freely give leave [to amend pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court can deny a request to amend as futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). The problem with Plaintiff's claims against the government are substantive, and better pleading will not change the fact that Counts II and III are barred by the *Feres* doctrine. Accordingly, Counts II and III are dismissed without leave to replead.

## IV. DEFENDANT DOE

Defendant Doe has yet to be identified in the complaint (or in an amended complaint) and served. Plaintiff is therefore directed to file a status report within thirty (30) days of the date of this Order addressing how she would like to proceed with respect to Count I against Defendant Doe, and if she would like to proceed, to address the Court's subject-matter jurisdiction over the claim.

## V. CONCLUSION

For these reasons, it is hereby

---

[4] Given the Court's finding that the Plaintiff's claims against the United States are barred by the *Feres* doctrine, the Court does not consider Defendant's other 12(b)(1) arguments regarding the discretionary function and intentional tort exceptions to the FTCA or Defendant's motion to dismiss under Rule 12(b)(6).

**ORDERED** that Defendant United States' motion to dismiss (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED** that Counts II and III of the Complaint (Dkt. No. 1) are **DISMISSED** under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction without leave to amend; and it is further

**ORDERED** that Plaintiff file a status report within thirty (30) days of the date of this Order addressing how she would like to proceed with respect to Count I of the Complaint (Dkt. No. 1) and addressing the Court's subject-matter jurisdiction over that claim if she would like to proceed.

**IT IS SO ORDERED.**

Dated: September 23, 2024
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge